# THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

(1) L. DUANE WILSON, and
(2) HELEN L. WILSON, husband and wife,

        Plaintiffs,

v.

(1) STATE FARM FIRE AND CASUALTY
COMPANY,

        Defendant.

Case No. 21-cv-00062-CVE-JFJ

## STATE FARM FIRE AND CASUALTY COMPANY'S
## MOTION FOR PARTIAL SUMMARY JUDGMENT[1]

Robert J. Carlson, OBA No. 19312
James Wesley S. Pebsworth, OBA No. 30900
Brandon C. Bickle, OBA No. 22064
GABLEGOTWALS
1100 ONEOK Plaza
100 West Fifth Street
Tulsa, OK 74103-4217
(918) 595-4800
(918) 595-4990 (fax)
*rcarlson@gablelaw.com*
*wpebsworth@gablelaw.com*
*bbickle@gablelaw.com*

**Counsel for Defendant,
State Farm Fire and Casualty Company**

---

[1] State Farm seeks summary judgment on Plaintiffs' claim for breach of the covenant of good faith and fair dealing and on Plaintiffs' request for punitive damages.

## <u>TABLE OF CONTENTS</u>

Page

OVERVIEW OF ARGUMENT ................................................................................1

STATEMENTS OF UNDISPUTED FACTS ...........................................................4

    *Plaintiffs' Policy and Coverage with State Farm* ...............................................4

    *Plaintiffs' Claim to State Farm—Submitted Four Months After Date of*
    *Loss* ......................................................................................................................5

    *State Farm's Prompt Inspection* .......................................................................5

    *Plaintiffs Hire Coppermark and State Farm Hires an Engineer* .......................7

    *The Engineer's Written Report: Age-Related Deterioration Not Covered*
    *by Policy* ..............................................................................................................9

    *State Farm Denies Plaintiffs' Claim for Roof Replacement* ...............................9

    *State Farm's Conclusions Are Reasonable and Supported by the Engineer* ......9

    *Plaintiffs' Claim of Bad Faith: Failure to Pay Replacement Cost of Roof*
    *and "Delay"* .......................................................................................................10

MOTION FOR SUMMARY JUDGMENT STANDARD .......................................11

ARGUMENTS AND AUTHORITIES ...................................................................12

    I.    THE COURT SHOULD ENTER JUDGMENT AGAINST
            PLAINTIFF AS A MATTER OF LAW ON PLAINTIFFS' BAD
            FAITH CLAIM ...........................................................................12

          A.    A Legitimate Dispute Between Insured and Insurer is Not
               Bad Faith. ..........................................................................12

          B.    These Issues of Bad Faith Are Properly Decided by the
               Court. ................................................................................13

          C.    Plaintiffs Cannot Establish State Farm's Conduct Meets the
               Elements Required to Prevail on a Claim of Bad Faith. .............14

          D.    The Alleged Delays in Inspections or Payments Do Not
               Establish Bad Faith. ..........................................................17

          E.    Plaintiffs Cannot Meet Their Burden to Establish Bad
               Faith. ................................................................................19

II.    PLAINTIFFS' PUNITIVE DAMAGE REQUEST FAILS AS A
       MATTER OF LAW FOR SEVERAL REASONS.................................................21

CONCLUSION............................................................................................................................24

## <u>TABLE OF AUTHORITIES</u>

<u>Page</u>

**Cases**

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242, 251-52 (1986) ........................................................................... 11

*Badillo v. Mid Century Ins. Co.*,
121 P.3d 1080 (Okla. 2005)...................................................... 12, 13, 19, 22

*Ball v. Wilshire Ins. Co.*,
221 P.3d 717 (Okla. 2009) ............................................................. 12, 18, 19

*Bannister v. State Farm Mut. Auto. Ins. Co.*,
692 F.3d 1117 (10th Cir. 2012) ........................................................... 14

*Beers v. Hillory*,
241 P.3d 285 (Okla. Civ. App. 2010) ............................................... 19

*Buzzard v. Farmers Ins. Co.*,
824 P.2d 1105 (Okla. 1991)........................................................... 20, 22

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986)............................................................................ 12

*Christian v. Am. Home Assurance Co.*,
577 P.2d 899 (Okla. 1977).......................................................... 14, 15, 23

*City Nat. Bank & Trust Co. v. Jackson Nat. Life Ins.*,
804 P.2d 463 (Okla. Civ. App. 1990) ............................................... 20

*Cooper v. Nat. Union Fire Ins. Co.*,
921 P.2d 1297 (Okla. Civ. App. 1996) ............................................. 23

*Duensing v. State Farm*,
131 P.3d 127 (Okla. Civ. App. 2006) ............................................... 13

*Frank v. Mayberry*,
985 P.2d 773 (Okla. 1999)................................................................. 21

*Garnett v. Gov. Emps. Ins. Co.*,
186 P.3d 935 (Okla. 2008)........................................................... 13, 20

*Hamilton v. Northfield Ins. Co.*,
910 F.3d 1320 (10th Cir. 2018) ..................................................... 15, 16

iv

*Hayes v. State Farm Fire & Cas. Co.*,
  855 F. Supp. 2d 1291 (W.D. Okla. 2012) ....................................................... 13

*Lopez v. Farmers Ins. Co., Inc.*,
  CIV–10–0584–HE, 2011 WL 1807158 (W.D. Okla. May 6, 2011) ................................ 16

*Manis v. Hartford Fire Ins. Co.*,
  681 P.2d 760 (Okla. 1984) ........................................................... 13, 15, 20

*Martin v. Gray*,
  385 P.3d 64, 67 (Okla. 2016) ............................................................... 13

*McCorkle v. Great Atl. Ins. Co.*,
  637 P.2d 583 (Okla. 1981) ............................................................. 13, 15

*McLaughlin v. Nat. Benefit Life Ins. Co.*,
  772 P.2d 383 (Okla. 1988) ............................................................. 22, 23

*Newport v. USAA*,
  11 P.3d 190 (Okla. 2000) ................................................................... 15

*Oden v. Russell*,
  251 P.2d 184 (Okla. 1952) ................................................................. 22

*Oulds v Principal Mut. Life Ins. Co.*,
  6 F.3d 1431 (10th Cir. 1993) ......................................................... 12, 15, 19

*Peters v. Am. Life Ins. Co.*,
  77 P.3d 1090 (Okla. Civ. App. 2003) ................................................... 13, 19, 21

*Roberts v. State Farm Mut. Auto. Ins. Co.*,
  61 Fed. Appx. 587 (10th Cir. 2003) ......................................................... 13

*Rodebush v. Okla. Nursing Homes, Ltd.*,
  867 P.2d 1241 (Okla. 1993) ................................................................. 21

*Roesler v. TIG Ins. Co.*,
  251 F. App'x 489 (2007) ................................................................... 12

*Sellman v. Amex Assur. Co.*,
  274 Fed. Appx. 655 (10th Cir. 2008) .................................................. 15, 19, 20

*Sides v. John Cord Ses. Inc.*,
  981 P.2d 301 (Okla. 1999) ................................................................. 21

*Skinner v. John Deere Ins. Co.*,
  998 P.2d 1219 (Okla. 2000) ................................................................. 21

*Slocum v. Phillips Petro. Co.*,
   678 P2d 716 (Okla. 1984) ............................................................................ 22

*State Farm Fire & Cas. Co. v. Barton*,
   897 F.2d 729 (4th Cir. 1990) ....................................................................... 16

*Timmons v. Royal Globe Ins. Co.*,
   653 P.2d 907 (Okla. 1982) ...................................................................... 22, 24

*Willis v. Midland Risk Ins. Co.*,
   42 F.3d 607 (10th Cir. 1992) ................................................................... 23, 24

**Statutes**

23 O.S. § 9.1 ..................................................................................................... 22

23 O.S. § 9.1(B)(2) ............................................................................................ 22

**Rules**

Fed. R. Civ. P. 56(a) ......................................................................................... 11

## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Defendant State Farm Fire and Casualty Company ("State Farm") requests that this Court enter summary judgment against Plaintiffs Duane and Helen Wilson, and in favor of State Farm on (1) Plaintiffs' claim for breach of the covenant of good faith and fair dealing ("bad faith") and (2) Plaintiffs' request for punitive damages. Plaintiffs lack sufficient evidence to support their claims and State Farm is entitled to judgment as a matter of law because State Farm has an objectively reasonable basis for its claims decisions.

## OVERVIEW OF ARGUMENT

In this lawsuit, Plaintiffs allege claims for breach of contract and bad faith. Plaintiffs also assert claims for actual and punitive damages. State Farm is not seeking summary judgment on Plaintiffs' breach of contract claim, as it recognizes there is a factual dispute over whether Plaintiffs' roof may be repaired or if it must be replaced. State Farm does, however, request summary judgment on Plaintiffs' bad faith claim and on Plaintiffs' request for punitive damages. Plaintiffs claim State Farm acted in bad faith by delaying the claims process and by not fully paying all Plaintiffs believe they should be paid. The facts do not support Plaintiffs' allegations. Rather, the facts support, at best, the existence of a legitimate dispute as to what is owed under Plaintiffs' homeowners' insurance policy (the "Policy"). That is insufficient to support a claim of bad faith.

Plaintiffs made a claim under the Policy for alleged damages from a wind and hail storm that occurred on or about May 25, 2019. Plaintiffs waited almost four months (until September 20, 2019) before reporting their claim to State Farm. Once Plaintiffs made their claim, State Farm promptly assigned an adjuster, Claim Specialist Jeffrey Aleman ("CS Aleman"), to evaluate and assess Plaintiffs' claim. CS Aleman immediately contacted Plaintiffs, then inspected the exterior elevations of their property and identified a few items of damage, including a leak in the ceiling of the Plaintiffs' second-floor patio and hail dents to air conditioner condenser fins. Plaintiffs also

told CS Aleman there was storm damage to their window screens and guttering, but they had already replaced those items and did not preserve any evidence of the damage. Because the roof was wet at the time of his inspection, CS Aleman was not able to inspect Plaintiffs' roof, but he reassigned the roof inspection to another adjuster, Claim Specialist Brian Eckelhoff ("CS Eckelhoff"), who was specially certified to inspect two-story steep roofs like Plaintiffs'.

CS Eckelhoff contacted Plaintiffs and scheduled the roof inspection (of both Plaintiffs' residence and their pool house) for October 7, 2019. At the inspection, CS Eckelhoff climbed over the surface of the entire roof and found hail damage to valley metals and the metal roof covering two turrets. CS Eckelhoff found no hail damage to the roof's wood shakes, and he noted only two missing shakes that were likely the result of wind. CS Eckelhoff estimated covered damage from the wind and hail storm at $25,948.98. Even though no one from State Farm was able to inspect the guttering and window screens, State Farm included amounts for these items in its estimate. Pursuant to the terms of the Policy, State Farm withheld depreciation amounts and Plaintiffs' deductible, and paid Plaintiffs $13,197.38 on the same date of the roof inspection, October 7, 2019.

Plaintiffs did not immediately dispute State Farm's claim decision. Nearly two months later, on November 30, 2019, however, Plaintiffs hired public adjuster Coppermark to assist Plaintiffs with their claim. Coppermark did not provide State Farm with any additional information in support of Plaintiffs' claim until February 18, 2020, when it provided an estimate for replacement of Plaintiffs' entire roof and repair of storm damage at an amount exceeding $350,000. The estimate did not provide any information showing that the wood shakes on Plaintiffs' roof were damaged in the May 2019 storm.

In light of the discrepancy between its adjusters' estimates and Coppermark's estimate, State Farm sent two more representatives, Claim Specialist Mark Wood ("CS Wood") and Team

Manager Carmen Richwine ("TM Richwine"), to the property. CS Wood and TM Richwine inspected the exterior elevations[2] of Plaintiffs' property, but they found no damage that had not already been paid. State Farm then retained a third-party engineer, Stanton Smith, to inspect the wood shake roof. After inspection, Mr. Smith submitted a report agreeing with the prior State Farm inspectors that Plaintiffs' wood roof did not show storm damage. Both CS Eckelhoff and Mr. Smith separately concluded, during separate inspections, that the wood shakes on the roof exhibited typical age-related deterioration, but no storm damage.

Over time, roofs sustain damage from sun, weather, and age. Insurance does not cover weathering or damage due to time, sunlight, exposure, and age. Under Plaintiffs' Policy, repair or replacement is covered only if the actual damage was caused by a covered weather event. In this case, Plaintiffs allege damage to their property from a May 2019 storm. State Farm conducted four separate inspections of Plaintiffs' property, with one of those inspections completed by a third-party engineer. Both CS Eckelhoff and the third-party engineer reached the same conclusion—the wood shakes on Plaintiffs' roof were not damaged by the May 2019 storm. Moreover, as detailed below in the statement of undisputed facts, State Farm acted promptly in inspecting Plaintiffs' property and paying for the storm damage it found. Any alleged delay after State Farm's initial claims handling was either unavoidable due to the weather or was due to the delay of Plaintiffs or their public adjuster in providing information to State Farm.

Under Oklahoma law, an insured and insurer may have a legitimate dispute and if the insurance company does not pay because of the existence of such a dispute, it is not bad faith. This case involved nothing more than a legitimate dispute between Plaintiffs and State Farm. The Court

---

[2] CS Wood and TM Richwine inspected the exterior surfaces of the property, but they did not climb on the roof.

should grant this Motion and find against Plaintiffs on their claim for bad faith. For similar reasons, as discussed below, the Court should also deny any request for punitive damages at trial.

## STATEMENTS OF UNDISPUTED FACTS

### Plaintiffs' Policy and Coverage with State Farm

1.      Plaintiffs' property is insured under State Farm Policy #36-BJ-S690-8. The Policy has been renewed multiple times, but the applicable version of the Policy was effective from October 20, 2018 to October 20, 2019. Ex. 1, Renewal Declaration.

2.      Plaintiffs' Policy provides coverage for accidental direct physical loss to covered property.

## SECTION I – LOSSES INSURED

### COVERAGE A – DWELLING

*We* will pay for accidental direct physical loss to the property described in Coverage A, unless the loss is excluded or limited in **SECTION I - LOSSES NOT INSURED** or otherwise excluded or limited in this policy.  However, loss does not include and *we* will not pay for, any *diminution in value*.

Ex. 2, Policy, at SF.WILSON_00016 (emphasis and italics in original).

3.      Plaintiffs' Policy does not cover wear and tear or "weathering/aging."

## SECTION I – LOSSES NOT INSURED

*We* will not pay for any loss to the property…that consists of, or is directly and immediately caused by, one or more of the perils listed in items a. through m. below, regardless of whether the loss occurs abruptly or gradually, involves isolated or widespread damage, arises from natural or external forces, or occurs as a result of any combination of these:

* * * *

    g.  wear, tear, decay, marring, scratching, deterioration, inherent vice, latent defect, or mechanical breakdown;

    h.  corrosion, electrolysis, or rust;

    i.  wet or dry rot;

*Id*. at SF.WILSON_00018-019 (emphasis and italics in original).

*Plaintiffs' Claim to State Farm—Submitted Four Months After Date of Loss*

4.      On September 20, 2019, Plaintiffs and made a claim for damage to Plaintiffs' roof, alleging a date of loss of May 25, 2019, almost four months before Plaintiffs contacted State Farm. Ex. 3, Claim File Notes, at SF.WILSON_000055.

*State Farm's Prompt Inspection*

5.      On September 23, 2019, State Farm spoke with Plaintiffs and scheduled an inspection for September 27, 2019 at 10:00 a.m. *Id.* at SF.WILSON_000080-081.

6.      On September 27, 2019, CS Aleman met with Mr. Wilson at Plaintiffs' property. Plaintiffs reported their gutters, downspouts, and window screens had been damaged in the storm, but Plaintiffs had already replaced those items prior to contacting State Farm to make a claim.[3] No damage was found to the front or left elevations, and the rear and right elevations showed only minor damage to air conditioner condenser fins and a leak and stain on the second-floor patio ceiling. The roof was wet at the time of CS Aleman's inspection, so inspection of the roof could not be completed at that time. CS Aleman determined the amount of damage based on a partial inspection and made arrangements with Mr. Wilson for a second inspection by a claim specialist certified to inspect Plaintiffs' two-story steep roof. Ex. 3 at SF.WILSON_000079-80.

7.      CS Eckelhoff left a message for Plaintiffs on September 28, 2019, and Mr. Wilson returned the phone call on September 30, setting the roof inspection for October 7. In his inspection, CS Eckelhoff climbed onto the roof and took numerous photos documenting its

---

[3] Mr. Wilson testified he was not sure when Plaintiffs replaced their window screens and they had no records of doing so. Ex. 4, D. Wilson Depo. Tr., at 57:4-8. However, State Farm's notes show Plaintiffs reported losing screens on the right and rear elevations of their house, and the photos taken in State Farm's September 27 inspection show that those windows had screens in place. *See* Ex. 5, Inspection Notes and Photos, SF.WILSON_000632, 656, 673. CS Aleman did note the missing screens in his claim notes, and State Farm paid for replacing the screens on the right and rear elevations. Ex. 6, State Farm Estimate, at SF.WILSON_000765.

condition. Ex. 7, Eckelhoff Depo. Tr., at 79:2-5; Ex. 8, Claim File Photos (photos showing CS Eckelhoff's access of the roof). The inspection revealed a wood shake roof with hail damage to valley metals and the metal roof covering two turrets. CS Eckelhoff found no hail or storm damage to the wood shakes on the roof. Ex. 3 at SF.WILSON_000078-079. CS Eckelhoff determined the metal components of the roof could be replaced and the missing shakes could be repaired because the shakes "were in decent condition and would be able to be repaired around. There would be no breakage or anything of the nondamaged shingles during the repair process." Ex. 7 at 82:7-10. CS Eckelhoff found no storm damage to the pool house roof. *Id.*

8.      Immediately after CS Eckelhoff finished his inspection, he met with Mr. Wilson and paid Plaintiffs $13,197.38 for the storm damage to Plaintiffs' property. Ex. 3, at SF.WILSON_ 000069, 078-079, 230, 694 (providing amount and detail of payment estimate). The payment was based on a replacement cost value of damage to Plaintiffs' property ($25,948.87), minus Plaintiffs' deductible ($9,635.00) and depreciation costs ($3,116.49), for an actual cash value of $13,197.38. Ex. 6 at SF.WILSON_000762 (showing summary of coverage, payments, and replacement cost benefits available). Under the Policy, a portion of the depreciated cost is repaid after an insured makes the repairs. *Id.* After the inspection and payment to Plaintiffs in October 2019, State Farm had adjusted and paid Plaintiffs' claim.

9.      Even though State Farm was unable to inspect Plaintiffs' guttering, downspouts, and window screens, it paid for the damage Plaintiffs claimed to those items. *Id.* at SF.WILSON_000765-766. *See also* Ex. 4 at 151:12-152:23.[4] Indeed, Mr. Wilson went out of his

---

[4] Under the Policy, Plaintiffs had the duty to "exhibit the damaged property" and "keep an accurate record of repair expenses." Ex. 2 at SF.WILSON_000024. Plaintiffs did not fulfill those duties with regarding to the guttering, downspouts, and window screens but, in an act of good faith, State Farm accepted and paid the claim related to those alleged damages.

way to testify that State Farm paid for those items "promptly." *Id*. ("Q. Okay. So…State Farm took your word for it on the guttering and Best Choice Guttering's word for it and paid? A. Promptly paid. Promptly paid I would add, yeah.").

### *Plaintiffs Hire Coppermark and State Farm Hires an Engineer*

10.     Plaintiffs did not complain to State Farm about their payment, but they were apparently not satisfied that State Farm did not pay for them to replace their entire roof. Nearly two months later, on November 30, 2019, Plaintiffs entered into a contract with public adjuster Coppermark to "assist [them] in the preparation, presentation and settlement" of their insurance claim. Ex. 9, Coppermark Contract. In December, Coppermark contacted State Farm and requested copies of Plaintiffs' insurance policy. Ex. 3 at SF.WILSON_000078-079 (showing no communications from Oct. 7 inspection until Dec.).

11.     Neither Coppermark nor Plaintiffs requested a change in State Farm's claims decision or provided any additional information in support of their insurance claim until February 2020. On or around February 18, 2020, Coppermark submitted a Sworn Statement in Proof of Loss with an estimate that Plaintiffs' claim required replacement of the entire roof at an amount of $361,518.63. Ex. 10, Proof of Loss. *See also* Ex. 3 at SF.WILSON_000075.[5] Plaintiffs seek the amount of Coppermark's estimate as their damages in this case. Ex. 11, Pls.' Disc. Resp., at Int. 5.

12.     After reviewing Plaintiffs' Proof of Loss and Coppermark's estimate, State Farm determined that because "there is such a large price difference on the scope of repairs" the claim should go back to a field adjuster for another inspection. Ex. 3 at SF.WILSON_000075. TM

---

[5] Under the Policy, Plaintiffs had a duty to submit their sworn proof of loss "within 60 days after the loss." Ex. 2 at SF.WILSON_000024. Plaintiffs did not even submit a proof of loss within 60 days of the date they made their insurance claim, which was already nearly four months after the date of loss. However, State Farm, in an act of good faith, did not object to Plaintiffs' late proof of loss and set about evaluating the claim presented therein.

Richwine noted that State Farm's earlier inspection found no damage to the roof surface, while Coppermark's estimate called for a full roof replacement. *Id.*

13.     On February 26, 2020, CS Wood and TM Richwine inspected the elevations of Plaintiffs' property again. Ex. 3 at SF.WILSON_000074. Scott Beach, a representative of Coppermark, was also present. *Id.* CS Wood and TM Richwine did not find any damage not already included in State Farm's estimate. Ex. 12, Richwine Depo. Tr., at 33:22-23.

14.     At the inspection, State Farm also informed Coppermark that State Farm had hired engineer Stanton Smith with EFI Global to inspect Plaintiffs' property and provide a written report. Ex. 3 at SF.WILSON_000075. *See also* Ex. 13, Feb. 28 Letter.

15.     Mr. Smith contacted Coppermark multiple times to schedule his inspection. Ex. 3 at SF.WILSON_000073-074; Ex. 14, Mar. 13 Email (describing efforts to reach Coppermark to schedule inspection). Once the inspection was finally scheduled, it was delayed twice because of rain. Ex. 3 at SF.WILSON_000073-074 (showing multiple weather delays).

16.     Mr. Wilson complains that the delayed inspection is evidence of State Farm's bad faith. *See* Ex. 4 at 167:7-17. But Plaintiff's public adjuster, Greg Cannon of Coppermark, has acknowledged that "[y]ou can't get on a wet wood shake roof," and you cannot really evaluate a wet roof for hail damage. Ex. 15, Cannon Depo. Tr., at 131:16-132:8. Mr. Cannon said is it "[a]bsolutely" proper to reschedule an inspection if the roof is wet. *Id*. at 132:6-8.

17.     Mr. Smith inspected Plaintiffs' roof on April 8, 2020. Ex. 3 at SF.WILSON_ 000073. Mr. Smith climbed a ladder to inspect portions of the roof, but also climbed on the roof for part of the inspection. Ex. 16, Engineer's Report, at SF.WILSON_0000173. Mr. Smith's inspection revealed no hail damage to the wood shakes on the roof or the chimney pots. Ex. 3 at

SF.WILSON_000071-072; Ex. 16 at SF.WILSON_000175 (conclusions). Mr. Smith provided his written report to State Farm on May 12, 2020. Ex. 3 at SF.WILSON_000072.

18.     State Farm advised Coppermark of Mr. Smith's findings on May 13, 2020. *Id.*

### The Engineer's Written Report: Age-Related Deterioration Not Covered by Policy

19.     In his 44-page report, Mr. Smith concluded that "[n]o conclusive evidence of potentially damaging hail was present on the elevations of the subject property." Ex. 16 at SF.WILSON_0000175. Mr. Smith observed "[t]ypical, age-related deterioration of shakes includes erosion, splitting, and rot." He concluded that "[a]ll deterioration of the shakes in the photographs was consistent with age-related deterioration. No shakes on slopes facing any direction had been damaged by hail." *Id.*

### State Farm Denies Plaintiffs' Claim for Roof Replacement

20.     On May 22, 2020, State Farm provided Coppermark with Mr. Smith's report and informed it that the investigation of the claim was concluded. State Farm concluded, based on investigations by State Farm's claims personnel and Mr. Smith's consistent findings, that no wood shakes on Plaintiffs' roof had been damaged by hail, but the damage to the roof was "wear, tear and weathering…not covered under the policy." Ex. 17, May 22 Letter (enclosing report).

### State Farm's Conclusions Are Reasonable and Supported by the Engineer

21.     In this litigation, State Farm hired engineer Shawn Thompson to serve as an expert. Like CS Eckelhoff and engineer Stanton Smith, Mr. Thompson concluded, in part, that the storm damage to Plaintiffs' roof consisted of "a limited number of ***reparable*** wood roof shakes and shingles displaced by high winds…." Ex. 18, Thompson Expert Rep., at 38 (emphasis added). Mr. Thompson also noted that: "Splits and curling observed on a number of wood shakes and shingles on this roof are not the result of storm damage but are due to natural aging of wood exposed to repeated cycles of weather and moisture." *Id.* Mr. Thompson found that "[r]epair and replacement

of the limited number of wood roof shakes and shingles on this roof can be accomplished…." *Id.*

at 37 (finding Plaintiffs' roof repairable because of present condition and citing to multiple prior

repairs done on roof in recent years).

### *Plaintiffs' Claim of Bad Faith: Failure to Pay Replacement Cost of Roof and "Delay"*

22.     Plaintiffs claim that State Farm engaged in bad faith generally because of an alleged

delay in paying benefits and not paying an adequate amount (*i.e.* replacement of the roof). Ex. 11

at Resp. to Int. Nos. 2 and 4.

23.     Mr. Wilson testified that State Farm paid for "replacing the valleys [that had been

damaged by hail] and enough roof repair to accommodate those new valleys." Ex. 4 at 64:6-9. He

further stated that his roofer, A-Best Roofing, told him "that process doesn't work very

well…because of the brittle" condition of some of the wood shakes. *Id.* at 64:11-15 and 65:6-9

(Mr. Wilson mistakenly said State Farm told him it "doesn't work very well," but he later clarified

he meant to say A-Best).

24.     CS Eckelhoff, engineer Mr. Thompson, and contractor Derek Van Dorn all

determined that the storm damage on Plaintiffs' roof could be repaired without replacing the entire

roof. *See* Ex. 7 at 82:7-10; Ex. 18 at 37-38 ("[r]e pair and replacement of the limited number of

wood roof shakes…on this roof can be accomplished"); Ex. 19, Thompson Depo Tr. at 155:19-

156:2 ("I don't think it would be difficult to repair [the roof]. Plus, they've been repairing the thing

forever."); Ex. 20, Van Dorn Expert Report, at 14 ("the State Farm estimate…reasonably addresses

the storm related damages…to restore the property to its pre-loss condition") and 20 ("it is highly

likely the shakes are repairable"); and Ex. 21, Van Dorn Depo Tr., at 41:9-24 ("I believe [the roof]

can be repaired"). Indeed, even Plaintiffs' roofer, Sam Avila, admitted that the damaged metal on

Plaintiffs' roof could be replaced without replacing the entire roof. Ex. 22, Avila Depo. Tr., at

94:8-11 ("Q. [] Why couldn't they replace the damaged metal without replacing the entire roof? A. They could.").

25.     In his deposition, Mr. Wilson, stated that he believed "delaying the process" was bad faith, with Mr. Wilson specifically complaining about the "two or three times" the engineer's inspection of Plaintiffs' roof was delayed. Ex. 4 at 167:2-18. But Mr. Wilson's own public adjuster says it is "absolutely" proper to delay an inspection when the roof is wet. Ex. 15 at 131:16-132:8.

26.     Mr. Wilson testified that he has no specific complaints about CS Eckelhoff, and that CS Eckelhoff was courteous and "acted very professionally." Ex. 4 at 173:18-174:6. Mr. Wilson also testified that CS Eckelhoff discussed with him the damage he found in his inspection and explained his "assessment." *Id*. at 59:3-19. The only complaint Mr. Wilson had about any specific State Farm personnel was that, after seeing how long litigation experts spent on their inspection, Mr. Wilson felt CS Eckelhoff's inspection was too short to be thorough. *Id*. at 176:13-177:18 (testifying CS Eckelhoff's inspection was inadequate because it was only a "couple of hours"). However, Plaintiffs' own litigation expert, engineer Carl Martin, testified that he only spent "maybe an hour or so" at Plaintiffs' property. Ex. 23, Martin Depo. Tr. at 69:13-16.

## MOTION FOR SUMMARY JUDGMENT STANDARD

A "court shall grant summary judgment if the movant shows…there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Where evidence is such that no reasonable jury could return a verdict for the non-moving party, the movant is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). The party seeking summary judgment bears the initial burden of demonstrating the basis for its motion and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," that demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S.

317, 323 (1986) (citation omitted). If the movant satisfactorily demonstrates an absence of a genuine issue of material fact with respect to a dispositive issue for which the non-moving party will bear the burden of proof at trial, the non-movant must then "go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial." *Id.* at 324.

ARGUMENTS AND AUTHORITIES

I.      **THE COURT SHOULD ENTER JUDGMENT AGAINST PLAINTIFF AS A MATTER OF LAW ON PLAINTIFFS' BAD FAITH CLAIM**

    A.      **A Legitimate Dispute Between Insured and Insurer is Not Bad Faith.**

Regardless of whether Plaintiffs prevail on their breach of contract claim, State Farm had a legitimate basis for its claims decisions, and summary judgment should be granted against Plaintiffs on their bad faith claim.

To prevail on a claim of bad faith, Plaintiffs must establish four elements by the greater weight of the evidence: (1) that they were entitled to coverage under the policy; (2) that State Farm's actions were unreasonable under the circumstances; (3) that State Farm failed to deal fairly and act in good faith toward Plaintiffs; and (4) that a breach of the duty of good faith and fair dealing was the direct cause of any damages sustained by Plaintiffs. *Badillo v. Mid Century Ins. Co.*, 121 P.3d 1080, 1093 (Okla. 2005); *Ball v. Wilshire Ins. Co.*, 221 P.3d 717, 724 (Okla. 2009).

In *Roesler v. TIG Ins. Co.*, 251 F. App'x 489, 506 (2007), the Tenth Circuit Court of Appeals explained: "Oklahoma law does not require the insurer's position in a dispute to be correct to avoid liability for bad faith. Even if the jury finds for the plaintiff on the dispute and renders a verdict for breach of an insurance contract, this does not mean the insurer acted in bad faith." Indeed, "the denial of a claim based upon a legitimate dispute does not imply bad faith." *Oulds v Principal Mut. Life Ins. Co.,* 6 F.3d 1431, 1442–45 (10th Cir. 1993); *Manis v. Hartford Fire Ins.*

*Co.*, 681 P.2d 760, 762 (Okla. 1984) (cause of action for bad faith "will not lie where there is a legitimate dispute"). A difference of opinion between an insurer and insured is not bad faith. *McCorkle v. Great Atl. Ins. Co.*, 637 P.2d 583, 587 (Okla. 1981) ("[T]ort liability may be imposed only where there is a clear showing that the insurer unreasonably, and in bad faith, withholds payment of the claim of its insured." (citation omitted)); *Garnett v. Gov. Emps. Ins. Co.*, 186 P.3d 935, 944 (Okla. 2008).

Insurers do not have to show "perfect" claim handling to defeat a bad faith claim. Instead, Plaintiffs have the burden to prove intentional bad faith behavior by the insurer. *Duensing v. State Farm*, 131 P.3d 127 (Okla. Civ. App. 2006) ("In pursuing a claim of breach of an insurer's duty of good faith and fair dealing, the plaintiff carries the burden of proof....") (citing *McCorckle*, 637 P.2d 583); *see Hayes v. State Farm Fire & Cas. Co.*, 855 F. Supp. 2d 1291, 1303 (W.D. Okla. 2012) ("Under Oklahoma law...an insurer's investigation need only be reasonable, not perfect.") (citing *Roberts v. State Farm Mut. Auto. Ins. Co*., 61 Fed. Appx. 587, 592 (10th Cir. 2003) (unpublished)). Even evidence of an insurer's mistakes or negligence in claim handling does not support bad faith recovery. *Peters v. Am. Life Ins. Co.*, 77 P.3d 1090, 1099 (Okla. Civ. App. 2003) (evidence of internal negligence not probative of the issue of bad faith). To the contrary, under Oklahoma law, bad faith is an intentional tort, which requires more than negligence to succeed. *Martin v. Gray*, 385 P.3d 64, 67 (Okla. 2016) ("[T]his Court emphasized the tort of bad faith is an 'independent <u>and intentional</u> tort.'") (citation omitted; emphasis added); *Badillo*, 121 P.3d at 1093.

### B.    These Issues of Bad Faith Are Properly Decided by the Court.

"Before the issue of an insurer's alleged bad faith may be submitted to the jury, the trial court must first determine as a matter of law, under the facts most favorably construed against the insurer, whether the insurer's conduct may be reasonably perceived as tortious." *Garnett*, 186 P.3d at 944; *see also Bannister v. State Farm Mut. Auto. Ins. Co.*, 692 F.3d 1117, 1127–28 (10th Cir.

2012) (explaining if "'there was a legitimate dispute as to coverage under the policy, and that [the insurer's] position was reasonable in light of the facts known or knowable to it at the time it denied [the] claim,' then 'as a matter of law [the insurer] did not breach the duty of good faith merely by refusing to pay [the] claim.'") (internal citations omitted).

### C.    Plaintiffs Cannot Establish State Farm's Conduct Meets the Elements Required to Prevail on a Claim of Bad Faith.

Plaintiffs claim State Farm acted in bad faith primarily because Plaintiffs believe State Farm did not pay all that is owed for the roof. SOF 22.[6] Plaintiffs claim their wood roof was damaged by a storm and the entire roof must be replaced. SOFs 11, 22-23. At the same time, several of the people who inspected Plaintiffs' roof concluded the wood components of the roof were not damaged by wind or hail, and that the roof could be repaired and did not require replacement. *See* SOFs 7-8, 13, 17, 19, 21, and 24. These material facts show a disagreement (*i.e.*, a legitimate dispute) and do not support a claim of bad faith.

In *Christian v. Am. Home Assurance Co.*, 577 P.2d 899 (Okla. 1977), Oklahoma recognized that an insurer may disagree with its insured without automatically suffering the adverse consequences of potential bad faith liability.

> We do not hold that an insurer who resists and litigates a claim made by its insured does so at its peril that if it loses the suit or suffers a judgment against it for a larger amount than it had offered in payment, it will be held to have breached its duty to act fairly and in good faith and thus be liable in tort.

> We recognize that there can be disagreements between insurer and insured on a variety of matters such as insurable interest, extent of coverage, cause of loss, amount of loss, or breach of policy conditions. Resort to a judicial forum is not per se bad faith or unfair dealing on the part of the insurer regardless of the outcome of the suit. Rather, tort liability may be imposed only where there is a clear showing that the insurer ***unreasonably, and in bad faith,*** withholds payment of the claim of its insured.

---

[6] In this brief, citations to statements of undisputed facts will be in the format, "SOF __."

*Id.* at 904-05 (emphasis added.) A cause of action for bad faith "will not lie where there is a legitimate dispute." *Manis*, 681 P.2d at 762.

Oklahoma courts consistently recognize that a difference in opinion regarding the (1) evaluation of a claim, (2) cause of loss, or (3) amount of the loss does not constitute bad faith. *Id.* at 761 (citing *McCorkle*, 637 P.2d at 587). "The mere allegation that an insurer breached the duty of good faith and fair dealing does not automatically entitle the litigant to submit the issue to a jury for determination." *Oulds*, 6 F.3d at 1436. "'[T]he fact that a reasonable jury could find in favor of the insurer based on all facts known *or that should have been known* by the insurer when it denied a claim is strong evidence that a dispute is legitimate.'" *Sellman v. Amex Assur. Co.,* 274 Fed. Appx. 655, 658 (10th Cir. 2008) (unpublished) (emphasis in original) (quoting *Oulds*, 6 F.3d at 1442); *Newport v. USAA*, 11 F.3d 190, 195 (Okla. 2000) ("The essence of a bad-faith action 'is the insurer's unreasonable, bad-faith conduct, including the unjustified withholding of payment due under a policy.' The tort of bad faith does not foreclose the insurer's right to deny a claim, resist payment, or litigate any claim 'to which the insurer has a legitimate defense.'") (citations omitted).

Of particular relevance to this action, the Tenth Circuit Court of Appeals affirmed an Oklahoma district court decision, which summarily held that an insurer who relies on the report of a licensed engineer—in spite of objections by the insured or engineers hired by the insured—***does not violate its duty of good faith***. *Hamilton v. Northfield Ins. Co.*, 910 F.3d 1320, 1327 (10th Cir. 2018) (affirming court's summary judgment in favor of insurer on issue of bad faith).[7]

> Nor are we persuaded by [plaintiff's] criticisms of [the] engineer. The [] engineer was a licensed professional engineer with a degree in civil engineering. [Plaintiff] presents no legal authority to support his argument that these qualifications were insufficient to permit [the insurer] to rely on the engineer's opinion, and we are not

---

[7] *Reh'g granted, judgment vacated*, 913 F.3d 998 (10th Cir. 2019), *order clarified*, 913 F.3d 998 (10th Cir. 2019).

persuaded that [the insurer's] reliance on the [] engineer was unreasonable here. Neither [plaintiff's] characterization of the engineer's conclusions as "inexplicable", nor the location or timeline of the wind data he used, makes the report unusable to establish "an objectively reasonable basis for denying the insured's claim."

*Id*. (quoting *State Farm Fire & Cas. Co. v. Barton*, 897 F.2d 729, 731 (4th Cir. 1990)).

The district court's ruling in *Lopez v. Farmers Ins. Co., Inc.*, CIV–10–0584–HE, 2011 WL 1807158 (W.D. Okla. May 6, 2011), also provides guidance. In that case, the plaintiffs' bad faith claim was premised on the insurer's allegedly improper denial of the plaintiff's roofing claim. *Id.* at *1. During the adjuster's inspection, she concluded the damage was caused by wear and tear, which was not covered by the policy. *Id.* The court granted the insurer's motion for summary judgment on the plaintiff's bad faith claim because the "[t]he crux of plaintiff's argument [was] that defendants disagreed with his roofer and expert regarding the cause of the damage to his roof." *Id.* at *3. Plaintiffs failed to show that the defendant had overlooked any material facts and further failed to show that more investigation would have resolved the legitimate dispute between the parties as to the cause of the damage. *Id.*

The facts of this case are remarkably similar to these authorities that have entered summary judgment against plaintiffs on bad faith claims. State Farm relied, in part, on the report of a licensed professional engineer. The engineer concluded the damage to the property's roof was not caused by wind or hail, but rather by wear, tear, deterioration, and age. Age, wear and deterioration are not covered losses under the Policy. The opinion of the engineer was consistent with the prior inspection and opinions of State Farm's CS Aleman and CS Eckelhoff, both of whom inspected Plaintiffs' property. Thus, State Farm appropriately relied on separate inspections by both State Farm claims specialists and a third-party engineer in concluding that the damage to Plaintiffs' wood roof shingles was deterioration due to age and weathering over time, and not from a specific wind or hail storm. Further, Plaintiffs have not shown that additional or further investigation would

have led to a different result. Under the applicable case law, partial summary judgment should be entered in favor of State Farm and against Plaintiffs.

Plaintiffs disagree with State Farm's determination that Plaintiffs' roof could be repaired and did not require replacement. This is the crux of Plaintiffs' case. However, Plaintiffs have wholly failed to show that State Farm overlooked any material facts. Plaintiffs have similarly failed to show that any additional evidence exists that would alter State Farm's ultimate decision. The issue in this action is recognized in the case law as a legitimate dispute concerning State Farm's denial of Plaintiffs' claim under the Policy. Plaintiffs' conclusory claim that State Farm did not act in good faith is insufficient to challenge the reasonableness of State Farm's actions.

**D.     The Alleged Delays in Inspections or Payments Do Not Establish Bad Faith.**

Plaintiffs have also suggested that State Farm acted in bad faith due to alleged delays in the investigation. SOFs 16, 22, and 25. But Plaintiffs have not established that State Farm delayed in either inspecting Plaintiffs' property or paying for the covered damage it found. Plaintiffs waited almost four months, or until September 20, 2019, before notifying State Farm of a claim for alleged damages to Plaintiffs' property from a May 25, 2019 storm. SOF 4. State Farm contacted Plaintiffs to schedule an inspection within three days, and State Farm's first inspection of Plaintiffs' property occurred within one week of Plaintiffs' initial contact to State Farm. SOFs 5-6. Because Plaintiffs' roof was wet at the time of the first inspection, State Farm had to schedule a second inspection. That inspection occurred on October 7, 2019. SOFs 6-7. State Farm issued a payment for the total damage to Plaintiffs' property that same day. SOFs 8-9. Thus, seventeen days after receiving notice of the claim, State Farm had investigated Plaintiffs' claim and issued payment. *See* SOFs 4 and 8.

Nearly two months after State Farm paid Plaintiffs' claim, Plaintiffs hired a public adjuster. However, neither Plaintiffs nor their public adjuster provided any additional information to State Farm until February 18, 2020, when Coppermark submitted Plaintiffs' Proof of Loss with an

estimate to replace the entire roof for approximately $360,000. SOFs 10-11. Based on that information, CS Wood and TM Richwine made another site visit to Plaintiffs' property on February 26, 2020. SOFs 12-13. State Farm also hired engineer Stanton Smith to conduct another inspection of Plaintiffs' property. SOF 14. The engineer contacted Plaintiffs on March 11, 2020 to try to obtain a date for an inspection, and an inspection was eventually scheduled for March 24, 2020, but that inspection had to be rescheduled (first to March 31 and then to April 8, 2020) because of rain. SOF 15. Plaintiffs have suggested the engineer's inspection was improperly delayed and is bad faith. However, the engineer's inspection was moved because of rain. And, as recognized by Plaintiffs' own public adjuster, a wet roof cannot be safely or adequately inspected. SOF 16. Thus any alleged delays were due to Plaintiffs' own conduct or unavoidable circumstances (weather) and do not constitute bad faith by State Farm.

The engineer inspected on April 8, 2020 and provided a detailed written report on May 12, 2020; the report's conclusions were shared with Coppermark on May 13. SOFs 17-18. The engineer concluded, as did the State Farm claim specialists, that the roof was not damaged due to any hail or specific weather event, but was generally deteriorating and aging over time. SOF 19. As set forth in the facts, no improper delay by State Farm occurred. The claim also was not "active" for a period of time after State Farm had paid the claim and no additional issues had been raised by Plaintiffs (from October 2019 until February 2020). In any event, no alleged source of delay supports a claim of bad faith. Moreover, even if a delay had existed, nothing in the engineer's report *changed* the outcome and thus Plaintiffs were not harmed by any alleged delay.

Plaintiffs have not established the requirements for bad faith based on an alleged delay. In *Ball v. Wilshire Ins. Co.*, the Court recognized the required elements of a claim for bad faith delay:

> The elements of a bad faith claim against an insurer for delay in payment of first-party coverage are: (1) claimant was entitled to coverage under the insurance policy

at issue; (2) the insurer had no reasonable basis for delaying payment; (3) the insurer did not deal fairly and in good faith with the claimant; and (4) the insurer's violation of its duty of good faith and fair dealing was the direct cause of the claimant's injury.

221 P.3d at 724. Certainly, proof of simple negligence is *not enough* to establish bad faith:

[T]he minimum level of culpability necessary for liability against an insurer to attach is *more than simple negligence*, but less than the reckless conduct necessary to sanction a punitive damage award against [the insurer].

*Badillo*, 121 P.3d at 1094; *Beers v. Hillory*, 241 P.3d 285, 291-92 (Okla. Civ. App. 2010); *Peters*, 77 P.3d at 1099 ("bad faith and negligence are not synonymous").

The facts in this case do not establish behavior that is intentional or can reasonably be perceived as tortious, as is required for the Court to allow the bad faith claim to go forward. The facts in this case do not show intentional delay by State Farm. Further, the facts support that State Farm paid for covered damage but denied payment for replacement of the roof based on the report of an engineer and the State Farm claim specialists' conclusions that the damage to the roof was repairable and the wear and tear on the roof were not covered under the Policy. Thus, any alleged delay is *not* the reason that Plaintiffs were not paid the amount Plaintiffs request to replace their roof. And, any alleged delay did not change the outcome in this action. Plaintiffs lack sufficient evidence to show that State Farm's payment delays were intentional, or can reasonably be perceived as tortious, so State Farm is entitled to summary judgment on Plaintiffs' bad faith claim.

**E.      Plaintiffs Cannot Meet Their Burden to Establish Bad Faith.**

The undisputed facts of this case clearly demonstrate a legitimate dispute as to coverage of Plaintiffs' claim. "To successfully rebut an insurer's defense of having a legitimate dispute as to coverage, 'the insured must present evidence from which a reasonable jury could conclude that the insurer did not have a reasonable, good faith belief for withholding payment of the insured's claim.'" *Sellman*, 274 Fed. Appx. at 658 (*quoting Oulds*, 6 F.3d at 1436). If the insurer's conduct

was reasonable, the claim of bad faith should not be submitted to the jury. *Garnett*, 186 P.3d at 944 ("Before the issue of an insurer's alleged bad faith may be submitted to the jury, the trial court must first determine as a matter of law…whether the insurer's conduct may be reasonably perceived as tortious."); *City Nat. Bank & Trust Co. v. Jackson Nat. Life Ins.*, 804 P.2d 463, 468 (Okla. Civ. App. 1990). A claim of bad faith should not be submitted to a jury based on these facts. State Farm had a reasonable basis for its evaluation. State Farm relied on multiple experienced adjusters, a licensed engineer, and multiple inspections of Plaintiffs' property.

As recognized in *Sellman*, an insurer is not required to accede to all demands made by the insured. 274 Fed. Appx. at 656. The court noted that a "central issue in any analysis to determine whether breach [of the duty of good faith and fair dealing] has occurred is gauging whether the insurer had a good faith belief in some justifiable reason for the actions it took or omitted to take that are claimed violative of the duty of good faith and fair dealing." *Id.* at 658. Importantly, the Tenth Circuit Court of Appeals recognized an insurer "*is not required to honor claims blindly upon an insured's request.*" *Id.* at 659 (emphasis added).

A legitimate dispute is not bad faith. *Manis*, 681 P.2d at 762. Indeed, "[i]t is not a breach of the duty of good faith for an insurer to resort to a judicial forum to settle legitimate disputes as to the validity or amount of an insurance claim." *Garnett*, 186 P.3d at 944. State Farm's conclusion that the damage to the wood portions of Plaintiffs' roof was caused by wear/deterioration and therefore was excluded from coverage is unequivocally reasonable. The same is true of State Farm's determination that the roof is repairable. Therefore, the question of bad faith should not be submitted to the jury. *See Buzzard v. Farmers Ins. Co.*, 824 P.2d 1105, 1109 (Okla. 1991) ("The decisive question is whether the insurer had a 'good faith belief, *at the time its performance was requested*, that it had justifiable reason for withholding payment under the policy.'") (emphasis in

original; citations omitted); *see also Skinner v. John Deere Ins. Co.*, 998 P.2d 1219, 1223 (Okla. 2000) ("The record shows that [insurer] acted reasonably as a matter of law and, thus, summary judgment was proper. There was a legitimate dispute concerning the amount of UM coverage…to which each claimant was entitled….Because it is not bad faith to investigate or litigate a disputed claim, the trial court was correct in granting summary judgment for [insurer].").

State Farm inspected Plaintiffs' property several times, including one inspection by an engineer separately retained to inspect Plaintiffs' property. State Farm prepared an estimate for damage that was attributable to covered damage and promptly paid that mount to Plaintiffs. State Farm reviewed the information provided by the Plaintiffs during the claims handling process and conducted a reasonable investigation. Nothing during the claim handling process suggests that material facts were overlooked or that a more "thorough" investigation would have revealed a different result. State Farm's actions cannot constitute bad faith as a matter of law, and the Court should therefore grant summary judgment in State Farm's favor on Plaintiffs' bad faith claim.

## II. PLAINTIFFS' PUNITIVE DAMAGE REQUEST FAILS AS A MATTER OF LAW FOR SEVERAL REASONS.

If partial summary judgment is entered in favor of State Farm on Plaintiffs' bad faith claim, Plaintiffs' claim for punitive damages fails as a matter of law. *Peters*, 77 P.3d at 1099. However, even if the Court permits Plaintiffs to pursue a claim of bad faith at trial, the Court should nevertheless grant summary judgment against Plaintiffs on their request for punitive damages.

A plaintiff is not routinely entitled to punitive damages in a bad faith case. Rather, whether punitive damages are appropriate is first a question of law for the court. *Frank v. Mayberry*, 985 P.2d 773, 777 (Okla. 1999). ("The issue of whether the record contains enough evidence to justify a punitive damages award is a question of law."); *Sides v. John Cord Ses. Inc.*, 981 P.2d 301 (Okla. 1999); *Rodebush v. Okla. Nursing Homes, Ltd.*, 867 P.2d 1241, 1250 (Okla. 1993) (noting that

Oklahoma's punitive damages statute "require[s] a preliminary determination before the question c[an] even be considered by the jury"). Whether a showing of "reckless disregard toward another's rights from which malice and evil intent may be inferred…has been made remains an issue of law for the trial court in its role as gatekeeper to determine." *Badillo*, 121 P.3d at 1106.

Oklahoma's punitive damages statute provides that a jury may not award punitive damages unless it finds by *clear and convincing evidence* that "[a]n insurer has recklessly disregarded its duty to deal fairly and act in good faith with its insured." 23 O.S. § 9.1(B)(2). "[T]he availability of punitive damages in a case by an insured against his/her insurer for [bad faith] is not automatic, but rather is governed by the standard applicable in other tort cases." *Badillo*, 121 P.3d at 1106 (citing *Buzzard*, 824 P.2d at 1115).

In addressing the standard of proof for punitive damages, the Oklahoma Supreme Court has explained as follows:

> Exemplary damages are *imposed* by the law on the theory of punishment to the offender, for the general benefit of society, and are allowed only in cases where fraud, oppression, gross negligence or malice, actual or presumed, enter into the cause of action, but a person may commit such willful acts in reckless disregard of another's rights that malice will be inferred.

*McLaughlin v. Nat. Benefit Life Ins. Co.*, 772 P.2d 383, 387 (Okla. 1988). Specifically discussing punitive damages based on a claim of bad faith, the court went on to state, "the question of proof necessary to sustain a claim for punitive damages in a bad faith dealing case involving an insurance company is the same standard necessary to sustain such a claim in any case where punitive damages are sought under [23 O.S. § 9.1]." *Id*. (discussing *Timmons v. Royal Globe Ins. Co.*, 653 P.2d 907 (Okla. 1982) and *Oden v. Russell*, 251 P.2d 184 (Okla. 1952)). "The act which constitutes the cause of action must be actuated by or accompanied with some evil intent, or must be the result of such gross negligence—such disregard of another's rights—as is deemed equivalent to such intent." *Id*. (quoting *Slocum v. Phillips Petro. Co.*, 678 P2d 716, 718 (Okla. 1984).

To make a claim for punitive damages to the jury, Plaintiffs must show that State Farm acted with oppression, malice, fraud, gross negligence or wantonness. *Id.* "Even where there is evidence to support the recovery of actual damages in a bad faith action against an insurer, submission of the issue of punitive damages to a jury may be improper." *Willis v. Midland Risk Ins. Co.*, 42 F.3d 607, 614-15 (10th Cir. 1992) (citing *McLaughlin*, 772 P.2d at 385, 387, 389). Punitive damages do not follow from every breach of the duty of good faith and fair dealing, nor in every case in which a jury may render a verdict for the wronged party. *Id.*

> A plaintiff can succeed in establishing "bad faith" on the part of an insurer that is sufficient to support an award of actual damages, but insufficient to support submission of the issue of punitive damages. The "bad faith" must be accompanied by some "aggravating circumstance" to warrant submission of punitive damages to the jury under *McLaughlin*, while clear and convincing evidence of the requisite "evil intent" is required to submit the issue of punitive damages that exceed the actual damages under [23 O.S.§ 9.1].

*Cooper v. Nat. Union Fire Ins. Co.*, 921 P.2d 1297, 1299-1300 (Okla. Civ. App. 1996) (citations omitted).

Plaintiffs have no clear and convincing evidence of acts which were intentionally wrongful or indicative of the deception and dishonesty necessary to support a bad faith claim, much less an award of punitive damages. The undisputed material facts reveal no evidence from which reckless disregard, malice, or evil intent could be inferred. Plaintiffs disagree with State Farm's conclusions, but no evidence exists of "oppression, fraud, malice, or gross negligence," and a disagreement over coverage is not enough to state a claim for bad faith, much less a claim for punitive damages. *Christian*, 577 P.2d at 905 ("disagreements between insurer and insured" are "not *per se* bad faith or unfair dealing on the part of the insurer"). In *Willis*, the Tenth Circuit Court of Appeals provided examples of the tortious conduct that would open the door to punitive damages against an insurer: "adjuster falsified a report to negate coverage, the insurance company told the plaintiff that it would settle his claim if he dismissed his attorney, the company's

investigator concealed his identity from the plaintiff, and the company knowingly obtained confidential information about the plaintiff without seeking his signature to authorize its disclosure." *Id.* (citing *Timmons*, 653 P.2d at 916). There is no such evidence or conduct here. Accordingly, this Court should conclude that punitive damages are not available as a matter of law. State Farm is entitled to summary judgment on Plaintiffs' request for punitive damages.

## CONCLUSION

Plaintiffs allege that their roof was damaged by a wind and hail storm in May 2019. Multiple State Farm adjusters and an outside engineer conducted separate inspections of the property, and all concluded that, although there was some storm damage to portions of Plaintiffs' property (primarily soft metals), the wood shakes on Plaintiffs' roof did not sustain wind and hail damage. State Farm also determined that the few storm-damaged components of Plaintiffs' roof could be repaired without replacing the entire roofing system. State Farm paid for the covered damage if found. Although Plaintiffs disagree with State Farm's determination, the disagreement amounts to nothing more than a legitimate dispute over coverage. Plaintiffs cannot assert bad faith based on a legitimate dispute, and summary judgment should be entered for State Farm on Plaintiffs' bad faith claim. In addition, and independent of Plaintiffs' inability to prove bad faith, Plaintiffs cannot show that State Farm's conduct in this matter justifies an instruction on punitive damages at trial. State Farm asks the Court to grant its motion for summary judgment on Plaintiffs' claim of bad faith and, separately, on Plaintiffs' request for punitive damages.

_____

Robert J. Carlson, OBA No. 19312
James Wesley S. Pebsworth, OBA No. 30900
Brandon C. Bickle, OBA No. 22064
**GABLEGOTWALS**
1100 ONEOK Plaza
100 West Fifth Street
Tulsa, OK 74103-4217
(918) 595-4800
(918) 595-4990 (fax)
*rcarlson@gablelaw.com*
*wpebsworth@gablelaw.com*
*bbickle@gablelaw.com*

***Attorneys for Defendant,***
***State Farm Fire and Casualty Company***

## CERTIFICATE OF SERVICE

I do hereby certify that on the 2nd day of February 2022, a true, correct and exact copy of the above and foregoing document was filed with the Court and the undersigned understands that the Court's CM/ECF system will notify the individuals of record who are believed to be the following:

J. Drew Houghton
Micah Cartwright
**MERLIN LAW GROUP, P.A.**
One Leadership Square
211 North Robinson Avenue, Suite 210
Oklahoma City, OK 73102
dhoughton@merlinlawgroup.com
mcartwright@marlinlawgroup.com
**Attorney for Plaintiff**

_____

James Wesley S. Pebsworthp